## George O. Jarvis' Appeal from Probate.

A party in making a further loan may insist upon security for a former loan, and may even make the giving of such security a condition of the new loan, and yet the loan will not necessarily be usurious. It will depend upon the question whether the object was to get security for the old debt, or to make a loan of money with such security as a premium or compensation for the loan.

K owed J $7,000, and was a bankrupt. A was desirous to get a loan to enable himself to go into the manufacture of cotton-gins with one P, which promised large profits, and proposed to K that if he could get him the loan he would take him into the business and give him a part of his profits. K applied to J, who was his friend, for the loan for A, and all the parties met in New York to negotiate with regard to it. Here an arrangement was entered into by which J was to loan to A $7,000, and to take the note of A and P for the amount, secured by a mortgage of machinery owned by P, and A and P were to pay to J $8 on every cotton-gin sold, out of the profits of K, to be applied to the payment of the old indebtedness of K to J, for which old indebtedness K was also to give a note endorsed by A, payable in thirty months from date. This arrangement was carried out by the loaning of the money by J, and the execution and delivery of the notes and cotton-gin contract by the other parties. The statute of New York, which governed the case, made void all contracts by which in any way a greater sum or greater value than 7 per cent. was taken or agreed to be taken for the loan of money. In a suit

on the last mentioned note in favor of J against the administrator of A, in which usury in the loan of the $7,000 to A was set up in defense—it being claimed that the indorsement by A of the note in suit was a part of the consideration on which that loan was made, J claiming that it was the confident expectation of all parties that the note thus indorsed would be paid in full by the application of the $8 payments from the profits of K in the cotton-gin business, and that A would never be subjected on his indorsement, and that his object in making the loan was to assist K to get into business in the expectation that he would thereby be enabled to pay him the debt which he owed him—the court charged the jury that if they should find that J had no object in making the loan but to assist K to get into business and thereby collect the debt due him from K, and that it was the intention of all parties that the debt of K should be paid from the profits of the cotton-gin business accruing to him, and their confident expectation that these profits would be sufficient for that purpose, then there was no usury in the transaction. Held, on a motion of the defendant for a new trial,—1. That the loan of $7,000 by J to A, was not *per se* or as matter of law usurious. 2. That whether it was usurious or not would depend upon the intentions and motives of the parties at the time, the question being whether the indorsement of K's note by A was received as a premium or part compensation for the loan. 3. That though the charge of the court did not present this precise question so distinctly as would have been desirable, yet as under it the jury must have found that the parties did not regard the indorsement of A as really constituting any part of the compensation for the loan, there was not such error in it as to require the granting of a new trial.

Held also that the court properly rejected evidence offered by the defendant to show that the cotton-gin business was an entire failure and that no profits ever accrued to K therefrom, inasmuch as the question was, as to the character of the transaction at the time, and not as to subsequent results.

APPEAL to the superior court from the report of commissioners on the estate of Charles Atwood deceased, disallowing a claim of the appellant.

The claim of the appellant was upon the following note. " $7,000.   New York, 15th Feb., 1856.   Thirty months after date I promise to pay to Charles Atwood or order seven thousand dollars, with interest, value received.   George Kellogg." (Indorsed) " Charles Atwood." The case was tried to the jury.   The defense set up was that the note was given as a part of an usurious transaction, and by the law of the state of New York, (which governed the case,) was void. The statute of New York on the subject of usury, so far as applicable to the case, is as follows :—

" Sec. 1.   The rate of interest upon the loan or forbear-

ance of any money, goods, or things in action, shall continue to be seven dollars for one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time.

" Sec. 2. No person or corporation shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or greater value, for the loan or forbearance of any money, goods, or things in action, than is above prescribed.

" Sec. 3. Every person who, for any such loan or forbearance, shall pay or deliver any greater sum or value than is above allowed to be received, and his personal representatives, may recover in an action against the person who shall have taken or received the same, and his personal representatives, the amount of money so paid or value delivered above the rate aforesaid, if such action be brought within one year after such payment or delivery.

" Sec. 5. All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatsoever, and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured, or agreed to be reserved or taken, any greater sum or greater value, for the loan or forbearance of any money, goods, or things in action, than is above prescribed, shall be void."

George Kellogg, the maker of the note in question, was indebted to the appellant at the time it was given, to the amount of $7,000, and was and for some time had been insolvent. Atwood, the indorser, who was a relative of Kellogg, was at this time desirous to procure a loan of about that amount, for the purpose of lending the same to one Parkhurst, who was manufacturing an improved cotton-gin in the city of New York; and Atwood was expecting, if he succeeded in procuring the money for Parkhurst, to form a partnership with him in the manufacture of the cotton-gins, the profits from which were expected to be very large. In these circumstances Atwood proposed to Kellogg that he should apply to the appellant to make him (Atwood) the loan, and that he (Kellogg) should be employed as an agent of the company on a salary, and should share with him in the profits. Kellogg, who was

very desirous to secure the advantage thus offered, entered into a correspondence with the appellant, which resulted in his coming on to New York with his brother William Jarvis, to whom Kellogg was also indebted to the amount of about $1,000, where the matter was negotiated, and it was arranged that a loan of $7,000 should be made by the appellant and William Jarvis, for which the notes, jointly executed, of Atwood and Parkhurst should be given, payable at different times from nine to twenty-four months from date, to the order of the appellant and William Jarvis, which were to be secured by a chattel mortgage to be executed by Parkhurst, of a steam engine and machinery belonging to him, in his shop in the city of New York. It had also been proposed, as a part of the arrangement, by Kellogg to the appellant and his brother, that he would give to each of them Atwood's indorsement for his indebtedness to them severally—but when, at the negotiation in New York, this was stated by the appellant, Atwood objected to giving the indorsement, and stated that he had not understood that to be a part of the proposition made by Kellogg. He finally however consented to give the indorsement, on a further arrangement being made, by which $8 on each cotton-gin manufactured and sold was to be paid over to the Messrs. Jarvis out of the profits accruing to Kellogg, and to be applied to the payment of the debts thus guarantied. This arrangement was made in the expectation on the part of Atwood that the sums that would thus be applied would pay the entire indebtedness guarantied before the notes endorsed should become due, it being agreed that the same should be made payable thirty months from date.

The arrangement thus agreed upon was carried out by the execution and delivery to the Messrs. Jarvis of the joint notes of Atwood and Parkhurst for the $7,000 loaned, and of the chattel mortgage by Parkhurst for the security of the same;— by the execution by Kellogg and indorsement by Atwood and delivery to the appellant of the note for $7,000 for the old indebtedness of Kellogg to the appellant, (being the note in question in the present suit,) and a like execution and in-

dorsement of a note to William Jarvis for $1,000 for the old indebtedness of Kellogg to him—all the notes bearing date the 15th day of February, 1856 ; and by the execution and delivery by Atwood and Parkhurst to the Messrs. Jarvis of the following agreement with regard to the cotton-gins, the same being made wholly in their names, as Kellogg did not appear as a partner in the company.

" Whereas George Kellogg of the city of New York is indebted to George O. Jarvis of Portland in the state of Connecticut in the sum of $7,000, and to William Jarvis of Middletown in the sum of $1,000; and whereas they, the said George O. and William, have at our instance agreed to forbear and to give day to said George Kellogg for the payment of said sums of money for the period of thirty months from the date hereof :—Now, therefore, in consideration of the premises and of the sum of five dollars to us in hand paid, we, the undersigned, do hereby stipulate and agree to render to them, (the said George O. and William,) a true and faithful account of all cotton-gins sold by us, at the end of every successive six months from the date hereof, and will pay over to them, of and from the avails of such gins, the sum of eight dollars for each gin so sold by us, until the said full sum of seven thousand dollars, together with the lawful interest thereon, is paid to said George O., and the sum of one thousand dollars with interest is paid to said William. Given under our hands, at New York, this 15th day of February, 1856.                    CHARLES ATWOOD.
                                              S. R. PARKHURST."

It was claimed by the appellee, (the administrator upon the estate of Atwood, who died a few months after,) that the cotton-gin contract was entered into by Atwood and Parkhurst and the notes of Kellogg to the appellant and to William Jarvis respectively were indorsed by Atwood, as a part of the consideration on which the loan of $7,000 was made by the Messrs. Jarvis to Atwood and Parkhurst—and that if they were so, such loan was made on an usurious consideration, and the note so indorsed as a part of that consideration was void.  The appellant claimed that the

object of himself and his brother in making the loan was in great part to help Kellogg, whom they had previously befriended, to get into business, with the expectation also that if he should be successful in business he would be able to pay his indebtedness to them, and that it was the expectation of all parties at the time, that the notes indorsed by Atwood would be paid in full from Kellogg's share of the profits of the cotton-gin business, so that Atwood would never be compelled to pay any thing upon them.  Evidence was introduced on both sides as to what was said by the parties in the course of the negotiation, and as to their intentions and expectations in the matter, and as to the real character of the transaction.

In the course of the trial the appellee offered evidence to prove that the cotton-gins which were to have been manufactured were never made, and that the business of manufacturing the same turned out to be an entire failure, and that nothing was ever realized therefrom.  To this evidence the plaintiff objected, and the court rejected it, on the ground that there was no defense or claim of defense set up except that the indorsement was void when made, as a part of the consideration of an usurious loan.

The appellee requested the court to charge the jury that, if the facts claimed by him should be found by the jury to have been proved, the present note was void under the statute of New York, and there could be no recovery upon it.  The court did not so charge the jury, but instructed them as follows:

" There is no question but that the note was drawn by Kellogg for a sufficient consideration.  It is, therefore, *prima facie* valid.  But it is claimed on the part of the appellee, that the indorsement of the note was so connected with the loan made at the time that it is usurious and void.  And the question you have to try, is, whether that transaction was usurious or not.  The contract is governed by the statute of New York.  The import of that statute would seem to be, that when a person makes a loan he may reserve seven per cent. for forbearance, but shall not take any other

thing or benefit of value. The claim on the part of the appellee is, that the sole purpose of Atwood, Kellogg and Parkhurst was to obtain a loan from the appellant. The appellant claims that his object was not to make a loan merely, but to assist Kellogg into business, and thereby to secure payment of a debt due to him from Kellogg, out of the profits which the latter was expected to derive from the business.

" To whom then was the loan made? If it was a loan made to Parkhurst and Atwood, and in connection with it, and constituting a part of the transaction and of the inducement to the loan, Parkhurst and Atwood agreed to pay the debt of Kellogg, by paying to the appellant $8 on every gin they should make, and in the mean time to guaranty the payment of Kellogg's debt, (he being an admitted bankrupt,) by indorsing his note for the amount, and if there were nothing more about it, it was usurious within the meaning of the statute of New York. The parties agree that this money was to form part of Atwood's capital in the partnership with Parkhurst. The latter had no interest in the matter, except that it was of importance to him that Atwood should be able to furnish his part of the capital. Parkhurst was not to pay the principal or interest of this loan. He only agreed to make a chattel mortgage by way of security for Atwood. If this was so, then Parkhurst was not a party to the loan, except in form, and as surety, and it was a loan to Atwood.

" But it is claimed on the part of the appellee, that, however this may be, the loan was in fact made on an usurious consideration, of which consideration the indorsement of the note in question formed a part, and was within the express prohibition of the statute of New York. If such was the character of the transaction the appellant is not entitled to recover. The appellant was no doubt induced to enter into the contract in order to secure his then substantially worthless debt against Kellogg. Kellogg sought the loan to enable him to pay it. Atwood sought it in order that he might be able to go into business with Parkhurst, and he

desired also to befriend Kellogg by giving him a share in the business.

" What then was the transaction, and what were the requirements of the appellant which were submitted to by Atwood ?

" In substance, the understanding appears to have been that the appellant should advance the money, and receive security for that and his interest by a chattel mortgage, and a guaranty of this debt by an indorsed note, of which payment was expected out of Kellogg's share of the profits of the business ; but contingently, if there should be no profits, out of Atwood as indorser. Atwood demurred to the giving of the guaranty ; and then by a supplementary arrangement, another contract was executed by Atwood and Parkhurst, by which $8 on each gin sold was to be appropriated to the payment of Kellogg's debt, and thereupon Atwood indorsed the note. If there were nothing more than this in the case I should instruct you that the transaction was usurious. For the statute prohibits the taking of any other thing of value than the lawful interest, as part of the consideration for the loan, and the appellant did receive security for his loan, and also a guaranty of the worthless debt of Kellogg, a third person. If, therefore, there was nothing more about it, if this was the real character of the transaction, it was, in my judgment usurious.

" But it is claimed by the appellant that such was not its character. It is claimed that there was not an absolute engagement, either by the contract in relation to the $8 on each gin sold, or by the indorsement on the part of Atwood, to pay the debt of Kellogg out of the funds of Parkhurst or Atwood ; and that there was no contingent engagement so to pay which it was the expectation of the parties there would ever be occasion to enforce; but, on the contrary, that it was the confident expectation of all, that, as Kellogg was to have a part of the profits of the business, and as they all contemplated that the business would certainly yield, for Kellogg's profits, an amount exceeding the note, and that thus the business itself would pay the debt of Kellogg, the

parties did not intend an usurious loan, and that it should not be so holden;—that even the appellant did not expect Atwood to pay out of his own funds, but out of Kellogg's profits from the business, which they all confidently expected would accrue to him. But, although the contract to pay $8 per gin was contingent upon the success of the business, this indorsement was absolute; and therefore, if there is anything which can save this case from the defense of usury, it is the fact that there was a confident expectation by all parties that Kellogg's debt would be paid, by means of the arrangement, out of his share of the profits of the business.

" Whatever the inclination of my mind may be upon this question, I deem it my duty to so present it to you that the question may be settled by the court of last resort, and so settled as to render another trial unnecessary, whatever may be the decision. I therefore instruct you, that if you find the appellant had no object or intention in making the loan in question, other than to assist Kellogg into business, and thereby collect the debts due to himself and William Jarvis from Kellogg; and that it was the intention and expectation of all parties to the transaction, that said debts of Kellogg should and would be paid from the profits of the business, which were to accrue to him as his share of it; and all parties were confident that such profits, and of sufficient amount to pay such indebtedness, would accrue from said business; then, there was no usury in the transaction, notwithstanding the appellant thereby acquired the absolute right to receive $8 per gin on the first thousand gins, by virtue of the contract of Parkhurst and Atwood, and notwithstanding he stipulated for and received the absolute indorsement of Atwood on the note in question."

The jury returned a verdict for the appellant, and the appellee moved for a new trial for error in the charge and rulings of the court and on the ground that the verdict was against the evidence. The question arising upon the latter part of the motion being wholly one of fact, the evidence is omitted.

*R. I. Ingersoll* and *Blackman*, in support of the motion.

1. The contract in question is in itself void under the statute of New York, which it is admitted is to govern the case. By that statute it is enacted " that no person shall directly or indirectly take or receive, in money, goods or things in action, or *in any other way*, any greater sum or *greater value* for the loan or forbearance of any money, &c., than at the rate of seven per cent.," and " that *all contracts or securities whatsoever*, whereupon or whereby there shall be reserved or taken, or secured, or agreed to be reserved or taken, any greater sum or greater value, for the loan or forbearance of any money, &c., than is above prescribed, *shall be void.*"

The money actually advanced by the appellant, and for which he received the notes of Atwood and Parkhurst, has all been repaid, or allowed against the estate of Atwood without dispute, and the present proceedings are taken to compel the estate of Atwood to pay the further sum of $7,000 upon his indorsement of the note of Kellogg, a notorious bankrupt, which was exacted from Atwood, at the time of the loan, and as a further consideration therefor, and without which the loan never would have been made. Now, on the making of this loan, what did the appellant require from the borrower as a condition of the loan? 1st. The notes of Atwood and Parkhurst for $7,000 at seven per cent. interest. 2d. Security of these notes, by a chattel mortgage, from Parkhurst. 3d. That Atwood and Parkhurst should execute the cotton-gin contract, which obligated them to pay him $8 upon every gin manufactured and sold by them, until $8,000 should be received thereby, over and above the sum loaned, with interest on this amount; this contract being to secure the appellant $7,000, and Wm. Jarvis $1,000. 4th. But apprehensive that sufficient cotton-gins might not be manufactured and sold, he exacted from Atwood the indorsement of Kellogg's note, which he knew to be utterly worthless, for a corresponding amount; and upon this indorsement he now seeks to recover.

These facts being beyond dispute, it can not be denied

that the appellant did receive from the borrower at the time of the loan "things in action"—to wit, the cotton-gin contract, and the indorsement of Atwood—over and above the notes of Atwood and Parkhurst for the amount actually lent, which were "a greater sum" or of "greater value" than seven per cent. for the money loaned. *Train* v. *Collins*, 2 Pick., 145. *Lowe* v. *Waller*, Doug. R., 736. 1 Swift Dig., 312, 313.

2. It is immaterial to the question of usury, whether the parties, at the time, intended and expected that Kellogg's share of the profits in the cotton-gin business would pay his debt, so long as the appellant was unwilling to trust to the uncertainty of that business, but required the absolute indorsement by Atwood of the note in question, to guarantee him against any possible failure. Whatever the appellant may have expected from the cotton-gin business, if he further intended and expected to hold Atwood responsible, at all events, for the payment of this bankrupt debt, and received from him a written obligation to pay the same, over and above the cotton-gin contract, then he received a "greater value than seven per cent.," and such written obligation, under the laws of New York, *must be void*. The judge erred in excluding from the jury a part of the intentions and expectations of the parties, and confining their minds to their expectation of profits from the cotton-gin business—excluding entirely their further expectation of absolute payment by the indorsement in the event of the failure of the cotton-gin business.

3. The court erred in ruling out the evidence offered by the defendant to prove that the cotton-gins were never made, and that the business of manufacturing the same turned out to be an entire failure, and that nothing was ever realized therefrom. In the absence of this evidence the jury were left to infer that Atwood had actually received a large amount from that business, as the share of Kellogg, and that the effect of a recovery would be, not to draw from Atwood's estate a usurious bonus for the loan of the money, but merely to take the effects of Kellogg left in Atwood's hands, and which should justly go to pay Kellogg's old indebtedness.

4. The verdict is against the evidence in the case. It is apparent from the appellant's insisting upon the indorsement as a condition of the loan, and the reluctance of Atwood to give it, that neither of them believed, at the time, that the Kellogg debt would certainly be paid from the profits of the cotton-gin business. The best evidence of the intentions of the parties is to be gathered from what they did at the time. That the appellant had some other object or intention in making the loan in question than to assist Kellogg into business, and thereby collect the debts due to himself and William Jarvis from Kellogg, is manifest from his insisting upon the indorsement by Atwood of this bankrupt debt as a condition of the loan, over and above the ample securities which he received for the loan actually made.

*Baldwin* and *Beach*, contra.

1. The judge was right in his charge to the jury. 1st. There is no peculiarity in the statutes of New York affecting the question as to what constitutes usury. 2d. In determining whether a particular contract is tainted with usury, the intention of the contracting parties is the controlling consideration. Edwards on Prom. Notes, 356. *Beckwith* v. *Windsor Manufacturing Co.*, 14 Conn., 594. *U. S. Bank* v. *Waggoner*, 9 Pet., 399. Chitty on Cont., 711, note 2. 3d. The relative position of the parties and their mutual expectations were such, that the court can see that they acted in perfect good faith, and with an honest intention, which exclude from this contract all taint of usury. *Shober* v. *Hauser*, 4 Dev. & Batt., 91. *Taylor* v. *Huff*, 7 Ind., 680. *Sizer* v. *Fuller*, 1 Hill, 227. *Solarte* v. *Melville*, 7 B. & C., 430. S. C., 1 M. & R., 208. *Dowdal* v. *Lenox*, 2 Edw. Cha., 267.

2. The court was right in rejecting the evidence as to the result of the cotton-gin business. Whatever usury existed must have been inherent in the contract itself at the time it was made; it could not have originated in, or be affected by, subsequent results. This point is intimately connected with the main question. As the successful or unsuccessful results of the business are immaterial in determining whether the

contract itself was tainted with usury, we may assume, without thereby affecting the legal rights of the parties, that the result was in accordance with their expectations. Atwood would then have in his hands, at the maturity of the note, sufficient funds of Kellogg to pay it. Suppose now he should appropriate those funds in payment of the note. If the contract was in truth usurious, the money could, under the third section of the New York statute, be recovered from the appellant, as having been paid in excess of the legal rate of interest. It is evident that no such action could be sustained either by Atwood or Kellogg. Not by Atwood, for the money was not his, but Kellogg's, and would have been paid by him as Kellogg's agent, in discharge of Kellogg's debt. And not by Kellogg, for he could not complain that his own money had been by his own directions appropriated in payment of his own just and admitted debt.

3. The verdict was not against the evidence.

ELLSWORTH, J. The difficulty which we have felt in this case has arisen from the manner in which the question of usury was submitted to the consideration of the jury. The note in question of $7,000, being given for a clear and admitted indebtedness of that amount from George Kellogg to the appellant, is good and valid on the face of it for what it expresses; and if tainted with usury, it must be because it is a part of the premium or compensation for the loan of another $7,000 which the appellant made on the same day to Kellogg or to Kellogg and Atwood, essentially for and at the request of Kellogg, for which Atwood and one Parkhurst gave their promissory notes. There being then a debt equal to the two sums, to wit, $14,000, justly and legally due to the appellant, it would seem, looking at the face of the transaction, as if there was no usury of necessity, or *per se*, in the notes taken. To find usury then in the note here in question we must look beyond the note itself; and the appellee, with this view, has attempted to show that the note is so involved with the loan of the same date of $7,000, as that it is a part of the premium and compensation for that loan, and

therefore is usurious and void. This is certainly possible, and it is actually so if the parties at the time so intended, which is the question now to be decided. We repeat, it is not so of necessity.

In looking at the loan of $7,000, we regard the question of usury as one of fact more than of law. The question is this,—was more than legal interest taken or reserved for the forbearance of the loan? Or, in the language of the New York statute, (which is the law of the case,) did the appellant, for the forbearance of the $7,000 loaned, "directly or indirectly take or receive, in money, goods or things in action, or in any other way, any greater sum or greater value for the loan than at the rate of seven per cent." The fact that the loan was made at the same time and on the same occasion that the present note was given, and perhaps also, the requiring of the giving of the security as a precedent condition to a further advance of money by the appellant, are not decisive of the question of usury, though they have an important bearing upon the character of the transaction. It is no unusual or unreasonable thing for a man to refuse to loan more money unless he is first secured for what he has already loaned; and to this end he may take security for the old debt by mortgage or indorsed notes or otherwise; and this is not usury, if nothing more than getting security is intended. In such a case, the new security is not the premium or compensation for the loan about to be made, although it may precede or accompany the act of loaning, or even be made a *sine qua non* of it, though it might be otherwise in a case where one who is a stranger to the old debt should give the security for it. We do not say that the person making the further loan, at legal interest, does not derive an advantage beyond the premium for the new loan; but it is not the *premium for the loan;* it is only a collateral incident. Hence, in these and kindred cases, it comes to be a question of intention or *bona fides;* a question what is the real character of the transaction; whether what is done is a cover for taking usury, or is free from any such design and therefore an unexceptionable and legal transaction. It may be either, and

we regard the matter as having been thus treated in this instance, and in this respect the charge was quite as favorable for the appellee as he had a right to ask. As already intimated, we did have doubts if this question of fact, on which the case was made to turn, was submitted to the consideration of the jury with sufficient exactness and clearness; nor are we now entirely free from doubt; but after much deliberation, we have come to the conclusion that the final clause of the judge's charge lays down substantially what is necessary on this point. The jury, under that portion of the charge, must have been satisfied that the securing the former debt of $7,000 was *no part of the premium or compensation for the loan of seven thousand dollars*, and that there was no agreement or understanding to that effect, but, on the other hand, that it was understood that the note in question would be paid out of the profits of Kellogg in the contemplated enterprise, and that Atwood, by his indorsement, was willing to guarantee that it should be so, provided thirty months could be allowed to do it in.

As to the other part of the motion, we think that the case does not fall within the rule of the court for granting a new trial for a verdict against evidence. To make the most of it, the evidence in behalf of the appellee was balanced by the counter evidence, and besides, usury is not a particularly favored defense in our courts of justice.

There was no error in the rejection of the evidence offered, to prove how the cotton-gin business, in the end, and long after the giving of the note in question, turned out.

We have not overlooked the cases cited by the defendant's counsel on the trial. They are not, in our judgment, inconsistent with the views we have herein expressed.

A new trial is not advised.

In this opinion the other judges concurred.

New trial not advised.